**IN THE COURT OF APPEALS OF IOWA**

No. 15-0792
Filed September 10, 2015

**IN THE INTEREST OF C.W.,**
**Minor Child,**

**C.K., Father,**
        Appellant,

**D.W., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Lee (North) County, Emily S. Dean, District Associate Judge.

A father and mother appeal separately from the order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Kimberly A. Auge of Napier, Wolf, Popejoy & Auge, LLP, Fort Madision, for appellant father.

Bryan J. Humphrey of Humphrey Law Office, Fort Madison, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine Miller-Todd, Assistant Attorney General, Michael Short, County Attorney, and Clinton Boddicker, Assistant County Attorney, for appellee State.

Kendra Abfalter, Burlington, for minor children.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, C.J.**

A mother and father appeal separately from the juvenile court order terminating their parental rights to their child, C.W. The mother maintains the Iowa Department of Human Services (DHS) failed to make reasonable efforts to reunify C.W. with the mother. The father maintains DHS failed to make reasonable efforts by refusing to conduct a home study of the father's new wife. Both parents maintain termination of their parental rights is not in C.W.'s best interests because of the closeness of his bond with each of his parents. Neither parent disputes that the statutory grounds for termination have been met.

Because we find DHS did not fail to make reasonable efforts to reunify C.W. with each of his parents, termination is in C.W.'s best interests, and no permissive factor precludes termination, we affirm the juvenile court's order terminating both the mother's and the father's parental rights.

**I. Background Facts and Proceedings.**

C.W. was born in January 2013. DHS became involved with the family in January 2014. C.W. was tested for drugs at the time and was positive for methamphetamine and tetrahydrocannabinol (THC). He was removed from his parents' care on January 24, 2014.

During the pendency of the case, the mother failed to follow through with three separate mental health evaluations that were set up for her. The mother was never employed and never had a stable home during the proceedings. She entered two drug rehabilitation programs. She entered the first in April 2014 and was unsuccessfully discharged on May 12, 2014. She was admitted into another program on September 30, 2014, and was unsuccessfully discharged on

November 18, 2014, due to contact with a man in the program that was considered "not appropriate." The mother missed at least five drug tests during the pendency of the case. She also admitted at various times there would "no point" in testing her because it would be positive for various substances including methamphetamine, marijuana, and Vicodin. Most recently, on March 12, 2015, she admitted that if she were tested, it would show she had recently smoked marijuana. At the April 10, 2015 termination hearing, the mother testified she had not used methamphetamine "in almost a month." At the time of the hearing, the mother was living with a new boyfriend. She had told the social worker the new boyfriend was abusive and she feared for her life at times. She testified at trial that returning C.W. to her care at that time would not be in his best interests.

The father also struggles with substance abuse issues. He admitted using methamphetamine during the pendency of the case, and the substance abuse evaluation he completed recommended treatment. He started one outpatient treatment and was unsuccessfully discharged from the program. He started a second treatment but was unable to finish due to his arrest and subsequent incarceration. The father was incarcerated during much of the pendency of the case. He was incarcerated in February 2014 for a shoplifting conviction and violation of his parole. He was released to a halfway house in March 2014 until July or August 2014. The father was married on September 6, 2014. Shortly after, on October 20, 2014, he was arrested for burglary. He was still incarcerated for the burglary offense at the time of the termination hearing. He anticipated coming before the parole board in August 2015.

The juvenile court filed an order terminating both the mother's and father's parental rights to C.W. on April 21, 2015. The mother's parental rights were terminated pursuant to Iowa Code section 232.116(1)(h) (2013). The father's parental rights were terminated pursuant to sections 232.116(1)(b), (e), and (h). The mother and father appeal separately.

**II. Standard of Review.**

Our review of termination decisions is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We give weight to the juvenile court's findings, especially assessing witness credibility, although we are not bound by them. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under section 232.116 (2015). *Id.* Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *Id.*

**III. Discussion.**

Iowa Code chapter 232 termination of parental rights follows a three-step analysis. *P.L.*, 778 N.W.2d at 39. The court must first determine whether a ground for termination under section 232.116(1) has been established. *Id.* If a ground for termination has been established, the court must apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in termination of parental rights. *Id.* Finally, if the statutory best-interest framework supports termination of parental rights, the court must consider if any of the statutory exceptions set out in section 232.116(3) weigh against the termination of parental rights. *Id.*

On appeal, we may affirm the juvenile court's termination order on any ground we find supported by clear and convincing evidence. *D.W.*, 791 N.W.2d at 707. The juvenile court terminated both the mother's and father's parental rights to C.W. pursuant to Iowa Code section 232.116(1)(h). The juvenile court may terminate a parent's parental rights pursuant to section 232.116(1)(h) when, at the time of the termination hearing, the child was three years of age or younger, had been adjudicated a child in need of assistance, had been removed from the parents' care for at least six months, and could not be returned to either of their care at that time. There is clear and convincing evidence each of the statutory elements for termination were met. C.W. was two years old at the time of the terminating hearing and had been removed from both of his parents' care for approximately fourteen months. He had been adjudicated a child in need of assistance on February 26, 2014. Additionally, C.W. could not be returned to either parents' care at the time of the hearing. The mother testified at the hearing that it was not in C.W.'s best interests to be placed back in her care at that time, and the father was incarcerated and did not anticipate being released until August 2015 at the earliest.

Both the mother and the father maintain DHS failed to make reasonable efforts to reunify C.W. with them. Specifically, the mother maintains reasonable efforts were denied when DHS refused to allow C.W. to be placed with her in a family treatment program that would address her substance abuse issues. The father maintains reasonable efforts were denied when DHS refused to conduct a home study of his new wife.

The family's social worker testified that the mother had recently asked to have C.W. join her at a family treatment program but DHS denied her request because there were concerns regarding her participation and investment in gaining sobriety. The mother had already been unsuccessfully discharged from two programs. Historically, the mother used drugs up until the time she entered a rehabilitation facility and then would spend the first couple weeks detoxing at the facility. While detoxing, the mother was very ill and slept most hours of the day. DHS had concerns the mother would be unable to care for C.W. if he was placed with her while she was detoxing. At one point, DHS planned to transition the mother from one substance abuse program to the family treatment program where C.W. would be able to join her, but the mother was unsuccessfully discharged from the substance abuse program before the transition could occur. We do not believe this constitutes a failure of reasonable efforts to reunify C.W. with his mother. *See In re C.H.,* 652 N.W.3d 144, 147 (Iowa 2002) ("[W]hat constitutes reasonable services varies based upon the requirements of each individual case.").

The father maintains reasonable efforts were denied when DHS refused to conduct a home study of his new wife's residence. The father married his wife on September 6, 2014. When DHS met with the father and new wife, she shared that she had a criminal history as a lookout for approximately thirty burglaries. Shortly after, on October 20, 2014, the father was arrested for burglary. The wife was arrested at the same time as the father. DHS refused to complete the home study because C.W. had never met the wife and had no relationship with his new stepmother. Additionally, DHS had concerns about the stability of the father and

wife's relationship. C.W. was doing well in his placement with another family member, and DHS did not want to upset his stability. We cannot say DHS failed to make reasonable efforts for reunification.

Both parents also maintain termination of their parental rights is not in C.W.'s best interests because of the bond C.W. shares with each parent. As the juvenile court stated:

> [C.W.] is bonded to both of his parents, but that bond has resulted in strain and stress in [C.W's] life. [C.W.] is extremely impacted by his parents' inconsistency and poor choices. He has suffered from severe behaviors, nightmares, and acting out when visits are missed, rescheduled, or when parents are late.
>
> The best interest of [C.W.] would be served by termination of parental rights and adoption. [C.W.'s] needs can be consistently met, and therefore his safety ensured, by [his current relative placement]. This is a stable, permanent, loving placement, where [C.W.] will at all times be sheltered from illegal drug exposure and criminal activity. [C.W.'s] reaction to the inconsistency he has experienced over the past year in response to inconsistent visitation with his parents, makes clear that his long-term needs are best met through a permanent, secure placement through termination and adoption.

We adopt the recitation of the juvenile court. C.W. should not have to wait endlessly his for parents to get their lives together. *D.W.*, 791 N.W.2d at 707. Termination of both parents' parental rights is in C.W.'s best interests.

Finding no factor in section 232.116(3) that precludes it, we affirm the termination of the both the mother's and father's parental rights.

**AFFIRMED ON BOTH APPEALS.**